IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NU-WEST MINING INC., NU-WEST INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | NO. 4:CV-09-431-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it plaintiff Nu-West's motion for partial summary judgment regarding the Government's claim for attorney fees. The motion is fully briefed and at issue. For the reasons explained below, the Court will deny the motion.

# LITIGATION BACKGROUND

In its complaint, plaintiff Nu-West seeks to impose on the Government the costs of cleaning up selenium contamination at four mine sites in the Caribou-Targhee National Forest. This Court granted partial summary judgment to Nu-West, holding that the Government is a potentially liable party (PRP) under CERCLA. *See Memorandum Decision and Order (Dkt. 84).*

The Government has filed a counterclaim alleging that Nu-West should be held liable for those same costs, and seeking attorney fees. In the motion now before the Court, Nu-West asks the Court to interpret CERCLA to restrict the Government's right to attorney fees because it has been found to be a PRP. Nu-West's motion presents a pure question of law requiring an interpretation of CERCLA.

## ANALYSIS

CERCLA authorizes the Government to recover from PRPs its enforcement costs, including its reasonable attorney fees. *U.S. v. Chapman*, 146 F.3d 1166 (9th Cir. 1998). Private parties, including PRPs seeking contribution from other PRPs, can also recover attorney fees, but on a more limited basis: They can recover fees only if they are a "necessary" cost of response. *Key Tronic Corp. v. U.S.*, 511 US 809, 820 (1994). That means that they cannot recover fees incurred in pursuing litigation, but can recover fees incurred that are "closely tied to the actual cleanup" of the site, and that "significantly benefitted the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." *Id.* Nu-West argues that because the Government is also a PRP in this case, it has no more right to attorney fees than a private party.

The holdings of *Chapman* and *Key Tronic* rely on the language of CERCLA, specifically § 9607. Subsection (a)(4)(A) of § 9607 governs the Government's right of

**Memorandum Decision and Order - page 2**

recovery, while subsection (a)(4)(B) governs a private party's right of recovery.

The Government's right to recovery, under subsection (a)(4)(A), includes "all costs of removal or remedial action . . . not inconsistent with the national contingency plan." *See* [42 U.S.C. § 9607(a)(4)(A)](). A private party's right to recover is stated in somewhat different language, and includes "any other necessary costs of response . . . consistent with the national contingency plan." *See* [42 U.S.C. § 9607(a)(4)(B)]().

While these two provisions use different wording, they appear at first glance to be quite similar. The Government can recover the costs of "removal or remedial action" while a private party can recover the costs of "response." Indeed, CERCLA defines all three terms – removal, remedial and response – to include "enforcement activities related thereto." *See* [42 U.S.C. § 9601(25)](). And if both the Government and private parties are entitled to recover the costs they incurred in "enforcement activities," both would seem to be entitled to attorney fees since attorneys play a central role in any enforcement activity.

But when a private party made that very claim, it was rejected by a majority of the Supreme Court. *[Key Tronic](), 511 U.S. at 819*. In that case, a private party PRP sued its fellow PRPs under CERCLA and sought contribution for clean-up expenses, including attorney fees, arguing that its fees were part of its "enforcement activity." The majority opinion in *[Key Tronic]()* disagreed, holding that it would "stretch the plain terms of the

**Memorandum Decision and Order - page 3**

phrase 'enforcement activities' too far to construe it as encompassing the kind of private cost recovery action at issue in this case." *Id.* While expressly declining to decide whether the Government would be entitled to attorney fees under the term "enforcement activities," *Key Tronic* implied in dicta that it agreed with district courts that allowed fees to the Government under that phrase. *Id.* at 817-18. The Supreme Court has not had occasion to directly address the Government's right to attorney fees under CERCLA since *Key Tronic*.

However, five years after *Key Tronic*, the Ninth Circuit did address the issue in *Chapman*. There, the Circuit noted *Key Tronic's* dicta implying that the Government could get fees under the "enforcement activities" language. *Chapman*, 146 F.3d at 1174. But purely as a matter of interpretation, what language in CERCLA warranted giving the Government more rights to attorney fees than a private party? The Circuit answered that question by citing § 9604(b). That provision applies only to the Government and allows it to "undertake such planning, *legal*, fiscal, . . . and other studies or investigations . . . to plan and direct response actions, *to recover the costs thereof*, and to enforce the provisions of this chapter." *See* 42 U.S.C. § 9604(b) (emphasis added).

Reading this provision together with § 9607(a)(4)(A), *Chapman* concluded that the Government is entitled to attorney fees for its enforcement activities. *Id.* at 1175. In

**Memorandum Decision and Order - page 4**

the present case, the Government has represented that it will only be seeking the attorney fees and legal costs it incurred in enforcement activities.[1]

Nu-West argues, however, that once the Government becomes a PRP – as in this case – it becomes subject to the attorney fee restrictions placed on private parties. In essence, Nu-West argues that the Government loses its status as a governmental entity when it becomes a PRP and so loses the entitlement to attorney fees it enjoyed as a governmental entity.

Nu-West cites no language in CERCLA supporting its reading of the statute, and there is none. It would have been easy for Congress to draft § 9607(a)(4)(A) so that it only applied when the Government was not a PRP, but no such language appears. That absence is not an invitation to add such language. Indeed, the preface to § 9607 evinces an intent by Congress to preclude any limitations on the Government's right of recovery that are not expressly set forth in that statute: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section . . . ." Given that § 9607 contains no express language stripping the Government of its rights when it becomes a PRP, this prefatory language precludes the Court from reading

---

[1] The Court simply repeats the Government's representation without expressing any opinion thereon. There is no petition for attorney fees before the Court and thus it is premature to evaluate the Government's representation.

**Memorandum Decision and Order - page 5**

such a limitation into the statute.

Nu-West points to a contrary statement in *Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928 (9th Cir. 2002)*. That decision, after noting that *Chapman* conferred on governmental entities the advantage of being able to recover attorney fees, stated that a governmental entity "that is also a PRP should not be able to avail itself of this advantage." *Id.* at 953.

Standing alone, that statement would seem to settle the issue in Nu-West's favor. But on closer examination, the statement is not determinative here. In *Fireman's Fund*, the City of Lodi passed local legislation – referred to as MERLO – modeled on CERCLA. It authorized the City to investigate and remediate toxic waste sites and to hold PRPs liable. Most importantly, for the purposes of the present case, MERLO allowed the City to recover all the attorney fees it incurred in the process of abating the toxic dangers.

The City passed MERLO in response to its discovery that its groundwater was contaminated by a toxic chemical. The City sued various PRPs under MERLO to impose on them the costs of remediation, and also sought its attorney fees under MERLO. The PRPs responded that CERCLA preempted the field and rendered MERLO inapplicable.

The Circuit held that CERCLA did not preempt the field, but only preempted those provisions of MERLO with which it conflicted. For example, the Circuit held that

**Memorandum Decision and Order - page 6**

"MERLO is preempted to the extent that it protects Lodi from contribution claims by other PRPs [because] CERCLA permits a PRP who incurs response costs to being suit to recover those costs from any other PRP." *Id*. at 946.

The Circuit then focused its preemption analysis on the City's claim that MERLO authorized recovery of its attorney fees from the PRPs, and specifically whether MERLO's attorney fee provision conflicted with CERCLA. The Circuit discussed how *Key Tronic* and *Chapman* interpreted CERCLA to grant an advantage to governmental agencies to recover attorney fees, an advantage not conferred on private parties. *Id*. at 953. The Circuit then stated as follows:

> We need not decide if a city is [a governmental entity under CERCLA] for purposes of recovering its attorney fees under CERCLA, because, in any case, a city that is also a PRP should not be able to avail itself of this advantage. If the district court finds that Lodi is indeed a PRP, it may not legislate for itself a litigation advantage by granting itself the right to collect attorney's fees. If, on the other hand, Lodi proves not to be a PRP, we see no reason why Lodi may not provide for recovery of attorney's fees for itself under its municipal liability scheme.

*Id*. As the decision continues, it becomes apparent that the City is seeking litigation fees, not enforcement costs. The Circuit describes the attorney fees at issue as follows:

> Lodi has expended significant attorney's fees in an attempt to escape liability through the enactment and defense of its municipal ordinance. These efforts, so far as we can tell, have not advanced the cleanup of the Lodi Site. Litigation costs may indeed be a part of recovering funds that are needed to advance the

> cleanup. However, the ability to recover litigation-related attorney's fees does not necessarily advance the pace of cleanup because it may encourage ambitious litigation.

*Id.*[2] Under CERCLA, no party – governmental or private – is entitled to litigation costs. Thus, by authorizing the City to recover litigation fees, MERLO conflicted with CERCLA and was preempted. The holding in *Fireman's Fund* is that a city cannot legislate for itself rights in litigation over hazardous waste remediation that conflict with CERCLA.

The holding in *Fireman's Fund* is not determinative or even applicable here. This case presents no preemption issue. At most, *Fireman's Fund* stands for the proposition that a governmental entity cannot recover litigation costs. As the Court stated above, it is too early to determine whether the fees and costs sought by the Government are litigation costs or the costs of enforcement activities. The single issue here is whether a governmental entity is stripped of its right to recover attorney fees when it becomes a

---

[2] Additional evidence that the City was asking for litigation costs comes from the Circuit's use of the term "attorney fees" to describe what the City was seeking. The Circuit seemed to assume that "attorney fees" meant litigation costs. At least, that is the only way to explain the following sentence in the decision: "Non-State litigants are, on the other hand, confined to recovery of 'necessary costs,' which do not include attorney's fees." *Id.* at 953. The Circuit must have been using the term "attorney's fees" to mean litigation costs, because otherwise the sentence is clearly wrong under *Key Tronic*, decided almost a decade before *Fireman's Fund*. Under *Key Tronic,* as discussed above, a private party can recover attorney fees albeit under more limited circumstances. The only way the sentence makes sense is if the Circuit used the term "attorney's fees" to mean litigation costs.

**Memorandum Decision and Order - page 8**

PRP.  Beyond a single conclusory sentence in dicta, *Fireman's Fund* contains no analysis of that issue.  Adopting Nu-West's argument would require the Court to insert its own language of limitation in [§ 9607(a)(4)(A)](), and the Court refuses to legislate in that manner.  Accordingly, Nu-West's motion for summary judgment is denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Nu-West's motion for partial summary judgment (docket no. 90) is DENIED.

DATED:  **June 30, 2011**

 

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge